IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARIA HENDERSON, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | )   CIVIL ACTION NO. 07-0799-CG-M |
| v. | ) |
| | ) |
| DOLLAR GENERAL CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

This matter comes before the court on two issues. First, this court previously entered an order finding that the parties are diverse and ordering the parties to submit evidence to establish a sufficient amount in controversy to support original subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 35). The defendant filed its submission. (Doc. 39). Although the plaintiffs' submission is not due yet, the defendant's submission indicates that the plaintiffs' counsel agrees that there is more than $75,000 in controversy in this case. For the reasons set forth below, the court finds a sufficient amount in controversy to support original subject matter jurisdiction under 28 U.S.C. § 1332. Having found jurisdiction, the court also addresses the pending motion for summary judgment. (Docs. 24, 25, 31). The court grants the motion for summary judgment.

**I.    JURISDICTION**

As this court pointed out when it ordered evidentiary submissions on the amount in controversy in this case, "all doubts about jurisdiction should be resolved in favor of remand to state court." University of S. Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). As the removing party, the defendant bears the burden of establishing jurisdiction. Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); Lowery v. Ala. Power

Co., 483 F.3d 1184, 1207-08 (11th Cir. 2007).

In this case, Maria Henderson and Lawrence Henderson sued the Dollar General Corporation[1] and two fictitiously-named defendants in the Circuit Court of Hale County, Alabama.  (Doc. 1-2, p. 1).  Ms. Henderson allegedly slipped and fell at the Dollar General store in Moundville, Alabama, on or about October 1, 2005.  (Doc. 1-2, p. 2, ¶¶ 6 and 7).  The plaintiffs allege that Ms. Henderson incurred $57,328 in medical bills, lost $9,000 in earnings, will lose future earnings in an unknown amount, suffered pain and suffering in an unspecified amount, and suffered emotional distress in an unspecified amount.  (Doc. 1-2, pp. 3-4, ¶¶ 13-17).  Mr. Henderson has allegedly "been deprived of the care, comfort, society, affection, companionship and services" of Ms. Henderson in an unspecified amount.  (Doc. 1-2, p. 4, ¶ 18). The plaintiffs seek punitive and compensatory damages in an unspecified amount.  (Doc. 1-2, p. 4).

The amount in controversy must exceed "the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  The defendant must prove that the amount in controversy exceeded $75,000 at the time when the case was removed.  Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002).  If removal was appropriate at that time, subsequent events, including "loss of the required amount in controversy," do not divest the court of jurisdiction.  Id.

Although the plaintiffs pleaded $57,328 in medical expense damages and $9,000 in lost earnings damages, for a total of $66,328, they did not specify any amount of damages they claim they are due for future lost earnings, pain and suffering, emotional distress, loss of

---

[1]Dolgencorp, Inc. asserts that it, not Dollar General, is the proper corporate entity to defend this lawsuit.  (Doc. 1, p. 1).  The court will refer to the defendant as "Dollar General" for the sake of simplicity.

2

companionship, or punitive damages. Consequently, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Williams, 269 F.3d at 1319; Lowery, 483 F.3d at 1210.

In Williams, the plaintiff tripped at a Best Buy retail store and claimed that she suffered "permanent physical and mental injuries," as well as "substantial medical expenses, . . . lost wages, and . . . a diminished earning capacity," which the plaintiff alleged would "continue . . . for an indefinite time into the future." Williams, 269 F.3d at 1318. The plaintiff sought "general damages, special damages, and punitive damages in unspecified amounts." Id. The removal papers simply asserted, without any factual support other than the plaintiff's refusal to stipulate that the case was worth less than $75,000, that the case satisfied the amount in controversy requirement. Id.

The Williams court described the defendant's burden as follows:

> When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed. We reiterate that the burden of proving jurisdiction lies with the removing defendant. A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden.

Williams, 269 F.3d at 1319-1320 (citations omitted). After establishing that the defendant had not met its burden when it removed the case, the court explained that it could review the record to see if anything in it established the amount in controversy. Id. at 1320. See also Lowery, 483 F.3d at 1215 n.64 (When subject matter jurisdiction is challenged more than 30 days after a case is removed, "the court may look to any relevant information the parties may present, up until the time of the challenge to jurisdiction."). The record was lacking, but the court found that the

plaintiff's "claims could conceivably amount to more than $75,000." Williams, 269 F.3d at 1320. The court held:

> [W]here the notice of removal asserts the jurisdictional amount and the plaintiff does not challenge that assertion in the district court, we will remand the case to the district court for factual findings on the amount in controversy if the amount in controversy cannot be clearly determined by a review of the record.

Id. at 1321. See also Lowery, 483 F.3d at 1215 n.69 (recognizing that the rule in Williams applies when the plaintiff does not challenge removal).

This court found that the Hendersons' "claims could conceivably amount to more than $75,000," Williams, 269 F.3d at 1320, and asked the defendant to submit evidence establishing a sufficient amount in controversy.

The defendant in this case submitted an affidavit from its attorney, in which he swears that he spoke with plaintiffs' counsel about the amount in controversy in this case on March 30, 2009, and that plaintiffs' counsel "indicated that he would stipulate the amount of controversy in this cause exceeds Seventy-Five Thousand Dollars ($75,000.00)," and that defense counsel "obtained [plaintiffs' counsel's] permission to submit this representation to the Court." (Doc. 39-2, p. 1).

The defendant also submitted sections of Ms. Henderson's deposition testimony, in which she explains she visited a doctor a couple of days after the incident because she "was hurting" (Doc. 39-4, p. 4), that she had three bulging disks in her neck and one in her lower back (Doc. 39-4, p. 4), that she "kept having problems with [her] leg" for "about a month" before her doctor sent her to a leg specialist (Doc. 39-4, p. 4), that she "hurt all over" even though she lacked any bruises after the fall (Doc. 39-4, p. 4), that she tore cartilage in her knee when she fell, requiring surgery (Doc. 39-4, p. 4), that she required additional surgery one year after her initial knee surgery on the same cartilage (Doc. 39-4, p. 5), that she required injections and

physical therapy to address her bulging disks (Doc. 39-4, pp. 5-6), that her doctor "gives" her medicine for her disks (Doc. 39-4, p. 6), that she still sees a doctor every three months "to try to control the pain" and "get [her] medication" (Doc. 39-4, p. 6), and her back and knee still hurt (Doc. 39-4, p. 8).

Although the defendant did not submit any new evidence putting a dollar amount on Ms. Henderson's pain and suffering, or on any other element of damages, the court is persuaded by the unpublished Allen v. Toyota Motor Sales, U.S.A., Inc., 155 Fed. Appx. 480 (11th Cir. 2005), decision. In that case, the plaintiffs alleged that a $66,678.65 car they purchased "suffered various defects that violated the vehicle's written warranty and the implied warranty of merchantability" and filed suit in state court. Id. at 480. The plaintiffs sought unspecified damages for "loss of use, diminished value, lost wages, aggravation, and other incidental and consequential damages . . . [and] also claimed they were entitled to either a refund of their purchase price or a free replacement[.]" Id. at 480-81. The defendant's removal papers asserted that the amount in controversy was satisfied because the plaintiffs sought damages that exceeded the $66,678.65 purchase price. Id. at 481. The plaintiffs did not move to remand in the district court. Id. Also, the "Joint Preliminary Report and Discovery Plan" signed by counsel for both parties expressly stated that there were no questions about federal jurisdiction. Id.

After a defense jury verdict, the plaintiffs appealed, arguing that the district court lacked original subject matter jurisdiction over the case. Id. The court found that the defendant established jurisdiction by a preponderance of the evidence.

> The notice of removal . . . attaches a specified amount ($ 66,678.65) to one component of the damage request. In addition, the notice of removal set out other components of Plaintiffs's claims for damages. In the light of the quantified damages approaching the jurisdictional amount by themselves, together with the specification of additional other damages claimed, and combined with Plaintiffs's representations before trial that no question existed about the district court's

> jurisdiction, on this record we can say – unlike the Best Buy court – "that the amount in controversy might well exceed the jurisdictional amount." [The defendant] shows, by a preponderance of the evidence, that the jurisdictional requirement is satisfied.

Id. at 482. The Allen decision, although not published, is almost directly on point. At least one other federal district court in this state has implied that it might follow the Allen rationale if the facts before the court were similar. Spivey v. Fred's, Inc., 554 F. Supp. 2d 1271, 1275 (M.D. Ala. 2008) (discussing, but declining to follow, Allen, because the quantified amount of damages before the court was only "several $ 3-$ 5 and two $ 2-$3 co-pays"). But see Constant v. Int'l House of Pancakes, Inc., 487 F. Supp. 2d 1308 (N.D. Ala. 2007) (not finding a sufficient amount in controversy based on plaintiff's $ 75,000 settlement demand).

As the court explained in Lowery, in order to satisfy the preponderance of the evidence standard, "the removing defendant must establish the amount in controversy by '[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.'" Lowery, 483 F.3d at 1209 (alterations in original). That standard, especially in light of the Allen decision, militates against remanding this case. The defendant need only make up a difference of less than $10,000 in controversy to keep this case in federal court. Although the evidence before the court is not impregnable, "a fair and impartial mind" would clearly find that years of pain in addition to the other elements of damage that the plaintiffs claim add up to a dispute of at least that amount. But see id. at 1220-21 (refusing to assume an average recovery of $12,500 for each of roughly 400 plaintiffs to meet jurisdictional minimum on timely motion to remand an environmental "mass action" pursuant to 28 U.S.C. § 1332(d)). The court finds that there is a sufficient amount in controversy and, consequently, that it has original subject matter jurisdiction over this diversity case.

6

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  As the Eleventh Circuit succinctly stated:

> A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted).  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the district court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002).

The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817 (1995).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." Ryan v. Int'l Union of Operating Engrs, Local 675, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990).  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994)(citing Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986)), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

Id. at 599.  The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. at 323.  The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law.  Id. at 323.

### III. FACTS

Ms. Henderson went to the Dollar General store at issue on October 1, 2005.  (Doc. 24-2, p. 7).  She walked to the rear of the store, picked up a container of laundry detergent and proceeded to walk up an aisle near the center of the store when she fell on a wet, slippery substance on the floor.  (Doc. 24-2, pp. 8-11).  Ms. Henderson did not see the substance before she fell and does not know what the substance was.  (Doc. 24-2, pp. 11-12).  She testified that the substance was not visible but that it was wet, as opposed to dried out.  (Doc. 24-2, pp. 12-13).  She saw that it was "all over the floor" after she fell.  (Doc. 31-2, p. 8).

Ms. Henderson does not know how the substance came to be on the floor, nor how long the substance had been on the floor.  (Doc. 24-2, p. 14).  Still, after Ms. Henderson fell, another customer told her that the substance had been on the floor for a period of time.  (Doc. 31-2, pp. 11-12). According to Ms. Henderson, that customer "said that she had noticed [the slippery substance] when she first came into the store.  I don't know how long she had been in there.  And she said she noticed it.  She noticed it before."  (Doc. 31-2, p. 11).

As was commonly the case when Ms. Henderson visited this particular Dollar General, there were boxes in the aisles that she had to walk around.  (Doc. 31-2, p. 5).  Although Ms. Henderson does not know what was in the boxes on the floor, she assumes that the substance on which she slipped came from one of the boxes that had been cut open with a box cutter.  (Doc. 31-2, p. 10).

**IV.    ANALYSIS**

Ms. Henderson was an invitee of the Dollar General.  Browder v. Food Giant, 854 So. 2d 594, 595 (Ala. Civ. App. 2002) ("When a person visits the premises for commercial purposes . . . the person is an invitee.").  Consequently, Dollar General owed Ms. Henderson a duty to "use reasonable care and diligence to keep the premises in a safe condition or, if the premises were in a dangerous condition, to give sufficient warning so that an invitee might avoid danger by the use of ordinary care."  Boudousquie v. Marriott Mgmt. Servs. Corp., 669 So. 2d 998, 1000 (Ala. Civ. App. 1995).

> The rule of law for cases such as this is that there is a duty upon all storekeepers to exercise reasonable care in providing and maintaining a reasonably safe premises for the use of their customers.  The storekeeper is not an insurer of the customers' safety but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition.  No presumption of negligence arises from the mere fact of injury to the customer.  The burden rests upon the plaintiff to show that the injury was proximately caused by the negligence of the storekeeper or one of its servants or employees.  Actual or constructive notice of the presence of the offending substance must be proven before the proprietor can be held responsible for the injury.

Dolgencorp, Inc. v. Hall, 890 So. 2d 98, 101 (Ala. 2003) (citation and quotations omitted, emphasis omitted).

Ms. Henderson must prove that her "fall resulted from a defect or instrumentality on the premises; that the defect was the result of the defendant's negligence; and that the defendant had or should have had notice of the defect before the time of the accident."  Hale v. Sequoyah Caverns & Campgrounds, Inc., 612 So. 2d 1162, 1164 (Ala. 1992).  Ms. Henderson will not meet her burden of proving actual or constructive knowledge with speculative testimony.  See Vargo v. Warehouse Groceries Management, Inc., 529 So. 2d 986, 987 (Ala. 1988) (affirming summary judgment for defendant in absence of evidence that defendant's employees knew about water on floor or that water had been on the floor for so long that the defendant's employees

knew about it, when the plaintiff and plaintiff's witness only testified "that they had no idea how long the water had been there, except to say that it 'looked like it had been there for a while.' For all the evidence put forth, the water may have been dropped or leaked on the floor only minutes before [the plaintiff] fell.").

In the alternative, the court will presume that the defendant was aware of the dangerous condition if the defendant's employees caused it.  Horne v. Gregerson's Foods, Inc., 849 So. 2d 173, 175 (Ala. Civ. App. 2002).  Consequently, Ms. Henderson can avoid summary judgment if she can show that there is a genuine issue of material fact as to whether the Dollar General employees affirmatively created the dangerous condition.

There is no genuine issue of material fact about Dollar General's actual or constructive knowledge of the slippery substance.  There is no evidence at all tending to show that the Dollar General employees knew that there was a slippery substance on the floor.  The only evidence that arguably supports the conclusion that the slippery substance was on the floor for long enough that Dollar General's employees should have known about it is a hearsay statement from another customer who said that she noticed the slippery substance when she entered the store.  Even assuming that this statement is admissible on summary judgment, it fails to support Ms. Henderson's case because the record does not show how long the customer had been in the store.

As for Ms. Henderson's argument that this case should go to trial because there is evidence that Dollar General caused the dangerous condition, none of her testimony about the cluttered, opened boxes has anything to do with this case.  As Ms. Henderson candidly recognized when she admitted that she did not know how the slippery substance found its way to the floor, neither the presence of boxes - apparently a regular situation at this Dollar General - nor the fact that the boxes had been opened, establishes how or when the slippery substance

made it to the floor.

Ms. Henderson assumes that the slippery substance came from one of the boxes, but she does not say how she reached this conclusion other than by observing that the boxes and the slippery substance were in the same vicinity.  Without more, such as an observation about the substance leaking from the box, this is insufficient.  It boils down to little more than the conclusion that the employees must have caused the dangerous condition because the dangerous condition was in the store where the employees worked, which, counter to the rule set out in the Dolgencorp case, would make the defendant an insurer of Ms. Henderson's safety.

The motion for summary judgment is **GRANTED** because Ms. Henderson has not come forward with facts to create a genuine issue of material fact on essential elements of her claim.

## V.     CONCLUSION

The court declines to remand the case because there is a sufficient amount in controversy to support original subject matter jurisdiction.  The motion for summary judgment is **GRANTED**.  Although neither party specifically addresses whether summary judgment should be granted against Mr. Henderson, his claim is predicated entirely on Ms. Henderson's accident.  Because summary judgment is due the defendant on Ms. Henderson's claim for the reasons set forth above, summary judgment is likewise **GRANTED** against Mr. Henderson.

**DONE** and **ORDERED** this 7th day of April, 2009.

/s/ Callie V. S. Granade  
CHIEF UNITED STATES DISTRICT JUDGE